[No. 39839.   Department Two.   June 19, 1969.]

MELVIN MCCAIN, JR. *et al.*, *Appellants*, v. EDNA J. PETERSON *et al.*, *Respondents.**

*Bianchi & Tobin*, by *Gordon R. Tobin*, for appellants.

*Hugh R. McGough*, for respondents.

HALE, J.—It had snowed in Seattle the night before, partly obscuring the white lane lines on North Greenwood Avenue near 140th, and it was snowing when the accident happened. By 7:45 that morning of December 23, 1965, traffic had formed tracks in the snow substantially defining the two southbound lanes.

Greenwood Avenue is a 4-lane arterial street running north and south. Plaintiff, Trudy McCain, testified that she was driving a white 1963 Thunderbird car south on North Greenwood on the inside southbound lane; it was snowing, but the snow did not completely cover the road, and tire marks defined both the inside and outside southbound lanes. She had passed the North 143rd Street intersection and, remaining in the inside or as she called it the center lane, she could see about one-half block distance. Because

*Reported in 456 P.2d 359.

of the snow, she was traveling slowly, 20 miles per hour. Greenwood, at that place, is straight, and slightly downgrade to the south, and all four traffic lanes, north and south, she said, were clearly visible to her in the snow.

After she passed the 143rd Street intersection and still proceeding at a speed of 20 miles per hour in the inside lane, she said she saw the car ahead in the outside southbound lane suddenly "began to cross in front of me, began to come into my lane." She tried to turn left to avoid a collision but the car turned into hers, she said, collided with it and pushed her vehicle over into the northbound traffic lanes and into the path of an oncoming automobile. Other witnesses, corroborating plaintiff's version of the accident, said that defendant's car turned suddenly to the left; that plaintiff turned left to avoid a collision; that defendant's car hit plaintiff's car and drove it across the highway into the outside northbound lane where it was struck again by an oncoming vehicle.

The jury returned a verdict for plaintiffs in the amount of $5,000, but the trial court granted a new trial because it had refused to give defendant's requested instruction No. 9 (WPI 60.01), that, although the violation of a statute generally constitutes negligence as a matter of law, the violation does not render one liable if due to causes beyond the violator's control and which he could not ordinarily have guarded against.[1] Plaintiffs appeal the order granting a new trial and present the issue of whether it was reversible error to refuse defendant's requested WPI 60.01.

---

[1] WPI 60.01:

"The violation, if you find any, of a [statute] [or] [ordinance] is negligence as a matter of law. Such negligence has the same effect as any other act of negligence. Therefore, it will not render a [defendant] [party] liable for damages [or bar recovery on the part of a [plaintiff] [party] claiming injury or damage] unless you further find that it was a proximate cause of the claimed injury or damage.

"[While the violation of a [statute] [or] [ordinance] is, generally speaking, negligence as a matter of law, such a violation will not render a [defendant] [party] liable or bar recovery on the part of a [plaintiff] [party claiming injury or damage] if it is due to some cause beyond the violator's control, and which ordinary care could not have guarded against.]"

Other than the refusal to give the requested instruction, there was no claim that the instructions were otherwise insufficient. Instruction No. 4 informed the jury that violation of a statute is in itself negligence, but should be considered only if the violation was a proximate cause of the accident. Instruction No 8 said that one is charged with seeing that which he would have seen had he been excercising ordinary care. Instruction No. 7 set forth the statutory rule that every vehicle must be operated as nearly as practicable within a single lane and shall not be moved from such lane until the operator has first ascertained that such movement can be made with safety. Plaintiff's evidence, we think, gave the jury ample evidence to support findings of negligence under instructions Nos. 7 and 8, which charged defendant driver with a duty both to see what was there to be seen and to remain in her lane until she could ascertain that the change of lane maneuver could be safely undertaken.

Defendant based the request for an instruction (No. 9) that one is not liable for violating a statute if the violation is due to causes beyond her control on her own testimony that she was forced to change lanes by a car overtaking her. She testified that, just before the collision and as she was driving in the outside lane south on Greenwood, she looked in her sideview mirror and "saw a white car coming up on me very fast. It pulled out into the snow and was coming up on me," and

Well, I felt I should give this car as much room as I possibly could. I could see that they had—didn't have as much traction as I had because the road was more clear where I was. So I thought if I could pull to the right as far as possible to give this car at least some chance of getting past me without actually hitting me, I made up my mind in a split second if he was going to hit me, fine, I wasn't going to give him any more room than I had given him. And as I looked up, here is Doctor Tracey off to my right and here we go, all three of us. I said, "If you hit me, that's fine, that's fine. But just let me get through here." Q. Did that car hit you? A. That car did not hit me.

She said that she edged her car to the right and that it lightly struck a car then being driven—or halted—in the parking lane by a Dr. Tracey, and that this slight impact somehow angled her car to the left and over into the inside southbound lane. She said that the right rear bumper of her car came into contact with Dr. Tracey's vehicle, but she declined to say that this impact forced her car into a collision with plaintiff's car. As she described it:

A. I think I just take exception to the word "force." My car turned at an angle, but I don't feel like it was shoved, pushed or cramped in any way. The front end turned to the left.

Her testimony in essence was quite vague and uncertain. She said she had no way of knowing if her car left the snow-marked traffic lane before coming in contact with the Tracey car on the right; she would express no opinion one way or the other as to whether her car had angled to the right outside the snow tracks just before her car's rear wraparound bumper bumped the Tracey vehicle; she repeated that she did not have enough facts at her disposal to form an opinion as to whether her car had departed from the snow tracks on the outside southbound lane just before coming into contact with the Tracey vehicle.

Although there were several witnesses to the accident, no one, other than defendant, saw a white car overtaking or passing defendant's vehicle, nor any vehicle which could be said to have forced her out of her lane to the right and into contact with the Tracey vehicle which was either sitting, stopped, or moving very slowly in the parking lane at the extreme right of the traveled portion of Greenwood Avenue.

Defendant driver's version of the circumstances and events which connected her car first with slight impact against the Tracey car on the right and then into a sharp collision with plaintiff's car on her left remained vague, uncertain and conflicting.

■ Defendant's unsupported description of the white car approaching and overtaking her even when regarded most favorably to her would not permit a reasonable infer-

ence that that car forced her out of her driving lane to the right and into a collision with the Tracey car, or that she could reasonably have inferred that she was in peril of its doing so. Thus, the principle that she was justified in changing lanes abruptly in violation of the rules of the road because compelled to do so is supported by no more than conjecture and speculation and would amount to no more than a scintilla of evidence. The record, consequently, is devoid of substantial evidence that conditions beyond defendant driver's control forced her to violate the statutory prohibition against changing lanes unsafely. It is, of course, error to give instructons which are unsupported by substantial evidence. *Reynolds v. Phare*, 58 Wn.2d 904, 365 P.2d 328 (1961); *Bensen v. South Kitsap School Dist. No. 402*, 63 Wn.2d 192, 386 P.2d 137 (1963); *Coffman v. McFadden*, 68 Wn.2d 954, 416 P.2d 99 (1966); *Petersavage v. Bock*, 72 Wn.2d 1, 431 P.2d 603 (1967).

There being insufficient evidence to support defendant's requested instruction No. 9, the court properly refused it, and it was error to grant a new trial because of such refusal. The case will, therefore, be reversed and remanded with instructions to enter judgment on the verdict for plaintiffs.

HUNTER, C. J., ROSELLINI and NEILL, JJ., and JOHNSEN, J. Pro Tem., concur.